**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | **MDL NO.: 2873** <br> **2:18-mn-2873-RMG** |

|  |  |
|---|---|
| HANNA D. LARRY, Individually and as Anticipated Representative of the Estate of MARVIN LARRY, and as Next of Kin to MARVIN LARRY, deceased, MARVISTA K. LARRY, Individually and as Anticipated Representative of the Estate of MARVIN LARRY, and as Next of Kin to MARVIN LARRY, deceased, and IMMANUEL S. LARRY, Individually and as Anticipated Representative of the Estate of MARVIN LARRY, and as Next of Kin to MARVIN LARRY, deceased, | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Plaintiffs, | : <br> : <br> : |
| v. | : ORIGINAL COMPLAINT <br> : |
| THE 3M COMPANY (f/k/a Minnesota Mining and Manufacturing Company), AGC CHEMICALS AMERICAS, INC., AMEREX CORPORATION, ARCHROMA, U.S., INC., ARKEMA, INC., BASF CORPORATION, Individually and as Successor in Interest to Ciba, Inc., BUCKEYE FIRE EQUIPMENT COMPANY, CARRIER GLOBAL CORPORATION, CHEMDESIGN PRODUCTS, INC., CHEMGUARD, INC., CHEMICALS, INC., CHUBB FIRE, LTD., CLARIANT CORPORATION, Individually and as Successor in Interest to Sandoz Chemical Corporation, CORTEVA, INC., Individually and as Successor in Interest to DuPont Chemical Solutions Enterprise, DEEPWATER CHEMICALS, INC., DUPONT DE NEMOURS, INC., Individually and as Successor in Interest to DuPont Chemical Solutions Enterprise, DYNAX CORPORATION, E. I. DUPONT DE NEMOURS AND COMPANY, Individually and as Successor in Interest to DuPont Chemical Solutions Enterprise, KIDDE PLC, INC., KIDDE-FENWAL, INC., Individually and as Successor in Interest to Kidde Fire Fighting, Inc., NATION FORD CHEMICAL COMPANY, NATIONAL FOAM, INC., | : Case No. 2:23-cv-00164-RMG <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

THE CHEMOURS COMPANY, Individually and as          :
Successor in Interest to DuPont Chemical Solutions    :
Enterprise, THE CHEMOURS COMPANY FC, LLC,           :
Individually and as Successor in Interest to DuPont   :
Chemical Solutions Enterprise, TYCO FIRE              :
PRODUCTS, LP, Individually and as Successor in        :
Interest to The Ansul Company, UNITED                 :
TECHNOLOGIES CORPORATION, UTC FIRE &                 :
SECURITY AMERICA'S CORPORATION, and DOE              :
DEFENDANTS 1-20,                                      :
                                                      :
_Defendants._                                         :

## PLAINTIFFS' ORIGINAL COMPLAINT
## AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, HANNAH D. LARRY, ("Anticipated Estate Co-Representative" or "Decedent First Child" or collectively as "Plaintiffs"), Plaintiff, MARVISTA K. LARRY, ("Anticipated Estate Co-Representative" or "Decedent's Second Child" or collectively as "Plaintiffs"), and Plaintiff, IMMANUEL S. LARRY, ("Anticipated Estate Co-Representative" or "Decedent's Third Child" or collectively as "Plaintiffs") by and through their undersigned counsel, hereby files this Original Complaint against: THE 3M COMPANY (f/k/a Minnesota Mining and Manufacturing Company), AGC CHEMICALS AMERICAS, INC., AMEREX CORPORATION, ARCHROMA U.S., INC., ARKEMA, INC., BASF CORPORATION, Individually and as Successor in Interest to Ciba, Inc., BUCKEYE FIRE EQUIPMENT COMPANY, CARRIER GLOBAL CORPORATION, CHEMDESIGN PRODUCTS, INC., CHEMGUARD, INC., CHEMICALS, INC., CHUBB FIRE, LTD., CLARIANT CORPORATION, Individually and as Successor in Interest to Sandoz Chemical Corporation, CORTEVA, INC., Individually and as Successor in Interest to DuPont

Chemical Solutions Enterprise, DEEPWATER CHEMICALS, INC., DUPONT DE NEMOURS, INC., Individually and as Successor in Interest to DuPont Chemical Solutions Enterprise, DYNAX CORPORATION, E. I. DUPONT DE NEMOURS AND CORPORATION, Individually and as Successor in Interest to DuPont Chemical Solutions Enterprise, KIDDE PLC, INC., KIDDE-FENWAL, INC., Individually and as Successor in Interest to Kidde Fire Fighting, Inc., NATION FORD CHEMCIAL COMPANY, NATIONAL FOAM, INC., THE CHEMOURS COMPANY, Individually and as Successor in Interest to DuPont Chemical Solutions Enterprise, THE CHEMOURS COMPANY FC, LLC, Individually and as Successor in Interest to DuPont Chemical Solutions Enterprise, TYCO FIRE PRODUCTS, LP, Individually and as Successor in Interest to The Ansul Company, UNITED TECHNOLOGIES CORPORATION, UTC FIRE & SECURITY AMERICA'S CORPORATION, and DOE DEFENDANTS 1-20, fictitious names whose present identifies are unknown (collectively "Defendants") and alleges, upon information and belief, as follows:

## **INTRODUCTION**

1.    Aqueous Film Forming Foam ("AFFF") is a specialized substance designed to extinguish petroleum-based fires. It has been used for decades, and continues to be used, by civilian and military firefighters to put out fires and in training and response exercises in preparation for fighting fires.

2.    AFFF contains synthetic, toxic per- and polyfluoroalkyl substances collectively known as "PFAS."[1] PFAS bind to proteins in the blood of animals and

---

[1] PFAS" includes but is not limited to: perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS") and related chemicals, including but not limited to those that degrade to PFOA and/or

humans exposed to such materials and not only remain and persist over long periods of time, but, due to their unique chemical structure, accumulate and build up in the blood/body of the exposed individuals with each additional exposure, no matter how small. PFAS can travel long distances, move through soil, seep into groundwater, or be carried through the air.

3.    Defendants collectively designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF with knowledge that it contained highly toxic and long-lasting PFASs, which would contaminate Decedent's blood and/or body with PFAS, and the resultant biopersistence and bioaccumulation of such PFAS in the blood and/or body of Decedent. Further, Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

4.    As a result, Decedent was exposed to AFFF containing PFAS and suffered severe personal injuries, including his death as a result.

5.    This action is brought by Plaintiffs on behalf of Decedent's Estate for injunctive, equitable, and declaratory relief for injuries arising from the intentional, knowing, reckless and/or negligent acts and/or omissions of Defendants in connection

PFOS, and including but not limited to C3-C-15 PFAS chemicals, such as perfluorohexanesulfonate (PFHxS), perfluorononanoate (PFNA), perfluorobutanesulfonate (PFBS), perfluorohexanoate (PFHxA), perfluoroheptanoate (PFHpA), perfluoroundecanoate (PFUnA), perfluorododecanoate (PFDoA), HFPA Dimer Acid (CAS # 13252 -13- 6/C3 Dimer Acid/P-08-508/FRD903/GX903/C3DA/GenX), and HFPA Dimer Acid Ammonium Salt (CAS#62037-80-3/ammonium salt of C3 Dimer Acid/P-08-509/FRD902/GX903/GenX).

with contamination of the blood and/or body of the Decedent with PFAS through the design, marketing, development, manufacture, distribution, release, training, and sale of AFFF containing PFAS and/or underlying chemicals and/or products added to AFFF which contained PFAS.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over the Defendants and has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because complete diversity exists between Plaintiffs and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interests and cost.

7.    The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

8.    Plaintiffs are filing this Complaint as permitted by Case Management Order No. 3 ("CMO #3") issued by Judge Richard M. Gergel of this Court. Pursuant to CMO #3, Plaintiffs designate the United States District Court for the Northern District of Georgia as the "home venue" where Plaintiffs would have otherwise filed suit pursuant to 28 U.S.C. § 1391. But for CMO #3, venue is proper in the United States District Court for the Northern District of Georgia in that the events or omissions giving rise to the claim occurred in that district. Plaintiffs respectfully request that, at the time of the transfer of this action back to trial court for further proceedings, this case be transferred to the United States District Court for the Northern District of Georgia.

9.    The United States District Court for the Northern District of Georgia

has personal jurisdiction over the Defendants because at all times relevant to this lawsuit, the Defendants manufactured, designed, marketed, distributed, released, promoted and/or otherwise sold (directly or indirectly) PFAS-containing AFFF products to various locations, such that each Defendant knew or should have known that said products would be delivered to areas in the State of Georgia for active use by Decedent during the training activities and firefighting activities. Therefore, the exercise of jurisdiction over the Defendants by the United States District Court for the Northern District of Georgia does not offend traditional notions of fair play and substantial justice.

## PARTIES

### A.    PLAINTIFFS

10.    Plaintiff, HANNAH D. LARRY, is a citizen of the United States of America and resides in Atlanta, Fulton County, Georgia. Ms. Larry was designated as Co-Executor of Decedent's estate upon his passing.  Ms. Larry is one of three surviving children and next of kin to Decedent.

11.    Plaintiff, MARVISTA K. LARRY, is a citizen of the United States of America and resides in Atlanta, Fulton County, Georgia. Ms. Larry was designated as Co-Executor of Decedent's estate upon his passing.  Ms. Larry is one of three surviving children and next of kin to Decedent.

12.    Plaintiff, IMMANUEL S. LARRY, is a citizen of the United States of America and resides in Atlanta, Fulton County, Georgia. Mr. Larry was designated as Co-Executor of Decedent's estate upon his passing.  Mr. Larry is one of three

surviving children and next of kin to Decedent.

**B.    DECEDENT**

13.    Decedent, MARVIN LARRY, was a citizen of the United States of America and resided in Atlanta, Fulton County, Georgia prior to his death.

14.    Decedent, MARVIN LARRY, was born on February 25, 1950.

15.    Decedent, MARVIN LARRY, died in Atlanta, Fulton County, Georgia on December 18, 2022.

16.    Decedent was exposed to Defendants' fluorochemical products throughout his many years of service as a civilian firefighter for the City of East Point Fire Department located in East Point, Georgia, including but not limited to, while training to become a firefighter, and routine trainings and active firefighting while in service as a civilian firefighter for the City of East Point Fire Department.

17.    As a result of his exposure to Defendants' fluorochemical products, Decedent was diagnosed with prostate cancer and colon cancer, which had caused Decedent to undergo treatment for both his prostate and colon cancers, and to suffer severe personal injuries, pain, and emotional distress, including death.

18.    The injuries, pain, suffering, loss of life, past medical expenses and care, funeral expenses, and emotional distress were caused by Defendants' fluorochemical products.

**B.    DEFENDANTS**

19.    The term "Defendant" or "Defendants" refers to all Defendants named herein jointly and severally.

20.     Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

21.     When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of defendants, and did so while acting within the scope of their duties, employment or agency.

22.     At all times relevant to this litigation, upon information and belief, each of the defendants designed, developed, manufactured, marketed and/or sold the AFFF or fluorochemical products containing PFOA or PFOS used by firefighters throughout the country, including the State of Georgia.

23.     Each of the Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or designed and manufactured components of and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint in such a way as to result in the contamination of Decedent's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in Decedent's blood and/or body.

24.     Defendant, **THE 3M COMPANY** (f/k/a/ Minnesota Mining and

Manufacturing Company) ("3M") is a Delaware Corporation and conducts business throughout the United States, with its principal place of business located at 3M Center, St. Paul, MN 55144. **Defendant may be served via Alternative Service as set forth in CMO #6**.

25.    Defendant, 3M COMPANY manufactured, distributed, and sold fluorochemical products and AFFF from the 1960s until 2002.

26.    Defendant, **AGC CHEMICALS AMERICAS INC**. ("AGC Americas") is a corporation organized and existing under the laws of Delaware, having a principal place of business in 11175 Cicero Drive, Alpharetta, GA 30022. **Defendant may be served via Alternative Service as set forth in CMO #6D**.

27.    AGC Americas operates throughout the United States, manufacturing glass, electronic displays and chemical products, including resins, water and oil repellants, greenhouse films, silica additives, and various fluorointermediates, including those used in AFFF products.

28.    Defendant, **AMEREX CORPORATION** ("Amerex") is a corporation organized and existing under the laws of Alabama, having a principal place of business at 7595 Gadsden Highway, Trussville, AL 35173. **Defendant may be served via Alternative Service as set forth in CMO #6A**.

29.    Defendant **ARCHROMA U.S., INC.** ("Archroma"), is a corporation organized and existing under the laws of Delaware, having a principal place of business at 4000 Monroe Road, Charlotte, NC 28205. **Defendant may be served via Alternative Service as set forth in CMO #6A**.

30.    Defendant, **ARKEMA, INC.** ("Arkema") is a corporation organized and existing under the laws of Pennsylvania, having a principal place of business at 900 First Avenue, King of Prussia, PA 19406. **Defendant may be served via Alternative Service as set forth in CMO #6A.**

31.    Arkema develops specialty chemicals and fluoropolymers.

32.    Arkema is a successor in interest to Elf Atochem North America and Atofina Chemicals Inc., which manufactured fluorosurfactants containing PFOA that was used in AFFF.

33.    Defendant, **BASF CORPORATION** ("BASF") is a corporation organized and existing under the laws of Delaware, having a principal place of business at 100 Park Avenue, Florham Park, NJ 07932. **Defendant may be served via Alternative Service as set forth in CMO #6A.**

34.    On information and belief, BASF is the largest affiliate of BASF SE and the second largest producer and marketer of chemicals and related products in North America.

35.    On information and belief, BASF Corporation is the successor in interest to Ciba-Geigy, Inc., Ciba Specialty Chemicals Company, and Ciba, Inc., a Swiss specialty chemicals company, that manufactured fluorosurfactants containing PFOA used in AFFF.

36.    Defendant, **BUCKEYE FIRE EQUIPMENT COMPANY** ("Buckeye") is a corporation organized and existing under the laws of Ohio, with its principal place of business at 110 Kings Road, Kings Mountain, NC 28086. **Defendant may be**

served via Alternative Service as set forth in CMO #6.

37.    Defendant, **CARRIER GLOBAL CORPORATION** ("Carrier"), is a corporation organized and existing under the laws of Delaware, with its principal place of business at 13995 Pasteur Blvd., Palm Beach Garden, FL 33418. **Defendant may be served via Alternative Service as set forth in CMO #6C.**

38.    Defendant, **CHEMDESIGN PRODUCTS, INC.** is a corporation organized and existing under the laws of Texas and having a principal place of business at 2 Stanton Street, Marinette, WI 54143, that manufactured fluorosurfactants containing PFOA used in AFFF. **Defendant may be served via Alternative Service as set forth in CMO #6B.**

39.    Defendant, **CHEMGUARD, INC.** ("Chemguard") is a corporation organized and existing under the laws of Texas, with its principal place of business at One Stanton Street, Marinette, WI 54143. **Defendant may be served via Alternative Service as set forth in CMO #6**.

40.    Upon information and belief, Chemguard is a subsidiary of Johnson Controls International, PLC.

41.    Defendant, **CHEMICALS, INC.** ("Chemicals") is a corporation organized and existing under the laws of Texas, with its principal place of business at 12321 Hatcherville Road, Baytown, TX 77521. **Defendant may be served via Alternative Service as set forth in CMO #6D**.

42.    Defendant, **CHUBB FIRE, LTD.** ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Northernsex, United Kingdom

TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134120. **Defendant may be served via Alternative Service as set forth in CMO #6F.**

43.    Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to; Chubb Fire & Security, Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.

44.    Defendant, **CLARIANT CORPORATION** ("Clariant") is a corporation organized and existing under the laws of New York, having a principal place of business at 4000 Monroe Road, Charlotte, NC 28205. **Defendant may be served via Alternative Service as set forth in CMO #6A.**

45.    On information and belief, Clariant was formerly known as Sandoz Chemicals Corporation, and manufactured fluorointermediates used in AFFF products.

46.    Defendant, **CORTEVA, INC.** ("Corteva") is a corporation organized and existing under the laws of Delaware, having a principal place of business at 974 Centre Rd., Wilmington, DE 19805. **Defendant may be served via Alternative Service as set forth in CMO #6A.**

47.    Defendant, **DEEPWATER CHEMICALS, INC.** ("Deepwater") is a corporation organized and existing under the laws of Delaware, having a principal place of business at 196122 E. County Road 40, Woodward, OK 73801. **Defendant may be served via Alternative Service as set forth in CMO #6B.**

48.    Defendant, **DUPONT DE NEMOURS INC.** (f/k/a DowDuPont, Inc.) ("Dupont de Nemours Inc.") is a corporation organized and existing under the laws of Delaware, having a principal place of business at 974 Centre Road, Wilmington, DE 19805 and 2211 H.H. Dow Way, Midland, MI 48674. **Defendant may be served via Alternative Service as set forth in CMO #6A.**

49.    On June 1, 2019, DowDuPont, Inc. separated its agriculture business through the spin-off Corteva, Inc.

50.    Prior to the separation, DowDuPont owned Corteva as a wholly-owned subsidiary formed in February 2018.

51.    On June 1, 2019, DowDuPont distributed a pro rata dividend of both issued and outstanding shares of Corteva common stock to DowDuPont shareholders.

52.    Corteva holds certain Dow DuPont assets and liabilities including DowDuPont's agriculture and nutritional businesses.

53.    On June 1, 2019 DowDuPont, the surviving entity after the spin-off of Corteva and another entity known as Dow, Inc., changed its name to DuPont de Nemours, Inc., to be known as DuPont ("New DuPont"). New DuPont retained assets in the specialty products business lines following the spin-offs, as well as the balance of the financial assets and liabilities of E.I. DuPont not assumed by Corteva.

54.    Defendants E.I. Du Pont de Nemours and Company; The Chemours Company; The Chemours Company FC, LLC; Corteva, Inc.; and DuPont de Nemours, Inc. are collectively referred to as "DuPont" throughout this Complaint.

55.    Defendant, **DYNAX CORPORATION** ("Dynax") is a corporation

organized and existing under the laws of Delaware, having a principal place of business at 79 Westchester Avenue, Pound Ridge, NY 10576. **Defendant may be served via Alternative Service as set forth in CMO #6.**

56.    On information and belief, Dynax entered the AFFF business in 1991 and quickly became a leading global producer of fluorosurfactants and fluorochemical foam stabilizers used in firefighting foam agents.

57.    Defendant, **E. I. DUPONT DE NEMOURS & COMPANY** ("DuPont") is a corporation organized and existing under the laws of Delaware, having a principal place of business is 1007 Market Street, Wilmington, DE 19805. **Defendant may be served via Alternative Service as set forth in CMO #6E.**

58.    DuPont is a successor in interest to DuPont Chemical Solutions Enterprise ("DuPont Chemical"), a Delaware corporation with a principal place of business located at 1007 Market Street Wilmington, DE 19898.

59.    DuPont Chemical was a member of the Telomer Research Program ("TRP"). As a member it was required to provide a list and volume of products it was selling in the United States on a yearly basis.

60.    In a letter addressed to the Office of Pollution Prevention and Toxics (OPPT) Document Control Office, dated May 14, 2003 and signed by Stephen H. Korzeniowski, DuPont provided its Telomer-based sales products in the United States for the year 2002.

61.    The letter, which was redacted and sent to the USEPA under its PFOA Stewardship Program, included AFFF sales volume, on an active ingredient pound

basis, as well as its Chemical Abstracts Service (CAS) number and chemical name, and is included in the PFOA Stewardship Program Docket.

62.    Defendant, **KIDDE PLC, INC.** ("Kidde") is a foreign corporation organized and existing under the laws of Delaware, having a principal place of business at One Carrier Place, Farmington, CT 06101. **Defendant may be served via Alternative Service as set forth in CMO #6**.

63.    Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

64.    Defendant, **KIDDE-FENWAL, INC.** ("Kidde-Fenwal") is a corporation organized under the laws of Delaware, having a principal place of business at One Financial Plaza, Hartford, CT 06101. Kidde-Fenwal is the successor-in-interest to Kidde Fire Fighting, Inc. (f/k/a Chubb National Foam, Inc. f/k/a National Foam System, Inc.) (collectively, "Kidde/Kidde Fire"). **Defendant may be served via Alternative Service as set forth in CMO #6**.

65.    Defendant, **NATION FORD CHEMICAL COMPANY** ("Nation Ford") is a corporation organized and existing under the laws of South Carolina, having a principal place of business at 2300 Bank Street, Fort Smith, SC 29715. **Defendant may be served via Alternative Service as set forth in CMO #6F.**

66.    Defendant, **NATIONAL FOAM, INC.** ("National Foam") is a corporation organized and existing under the laws of Delaware, having a principal place of business at 141 Junny Road, Angier, NC 27501. **Defendant may be served via Alternative Service as set forth in CMO #6F.**

67.     Upon information and belief, National Foam is a subsidiary of Angus International Safety Group, Ltd.

68.     Defendant, **THE CHEMOURS COMPANY** ("Chemours") is a corporation organized and existing under the laws of Delaware, having a principal place of business at 1007 Market Street, Wilmington, DE 19889. **Defendant may be served via Alternative Service as set forth in CMO #6E.**

69.     In 2015, DuPont spun off its "performance chemicals" business to Chemours along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its performance chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of fluorochemicals and the products that contain fluorochemicals.

70.     Defendant, **THE CHEMOURS COMPANY FC, LLC** ("Chemours FC"), a Successor in Interest to DuPont Chemical, is a corporation organized and existing under the laws of Delaware, having a principal place of business at 1007 Market Street Wilmington, DE 19899. **Defendant may be served via Alternative Service as set forth in CMO #6E.**

71.     Defendant, **TYCO FIRE PRODUCTS L.P.**, Individually and as Successor in Interest to The Ansul Company ("Tyco") is a limited partnership organized under the laws of Delaware, with its principal place of business at 9 Roszel Road, Princeton, NJ 08540. **Defendant may be served via Alternative Service**

**as set forth in CMO #6.**

72.    Upon information and belief, Tyco is a subsidiary of Johnson Controls International, PLC.

73.    Tyco is the successor in interest of The Ansul Company ("Ansul"), having acquired Ansul in 1990.

74.    Beginning in or around 1975, Ansul manufactured and/or distributed and sold AFFF that contained PFOA and PFOA. After Tyco acquired Ansul in 1990, Tyco/Ansul continued to manufacture, distribute and sell AFFF that contained PFOA and PFOS.

75.    Upon information and belief, Tyco acquired the Chemguard brand in 2011 and continues to sell Chemguard AFFF products through its Chemguard Specialty Chemicals division.

76.    Defendant, **UNITED TECHNOLOGIES CORPORATION** ("United") is a foreign corporation organized and existing under the laws of Delaware and does business throughout the United States. United Technologies has its principal place of business at 10 Farm Springs Road, Farmington, CT 06032. **Defendant may be served via Alternative Service as set forth in CMO #6.**

77.    United Technologies designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint.

78.    Defendant, **UTC FIRE & SECURITY AMERICAS CORPORATION,**

**INC.** (f/k/a GE Interlogix, Inc.) ("UTC") is a corporation organized and existing under the laws of North Carolina and does business throughout the United States. UTC has principal place of business at 3211 Progress Drive, Lincolnton, NC 28092. **Defendant may be served via Alternative Service as set forth in CMO #6.**

79.    Upon information and belief, Kidde-Fenwal, Inc. is part of the UTC Climate Control & Security unit of United Technologies Corporation.

## GENERAL FACTUAL ALLEGATIONS

### A.    THE FLUOROCHEMICALS: PFOA AND PFOS

80.    Fluorochemical products are man-made chemicals composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, and the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature, which is a reason why these molecules are so persistent. Fluorochemical products that contain eight carbon-fluorine bonds are sometimes referred to as "C8."

81.    Fluorochemical products are highly water soluble, which facilitates the ease at which they spread throughout the environment, contaminating soil, groundwater and surface water. This mobility is made more dangerous by their persistence in the environment and resistance to biologic, environmental, or photochemical degradation.

82.    Fluorochemical products are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found globally in water, soil, and air as well as in human food supplies, breast

milk, umbilical cord blood, and human blood serum.

83.    Fluorochemical products are persistent in the human body. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.

84.    Since fluorochemical products were first produced, information has emerged showing negative health effects caused by exposure to fluorochemical products.

85.    According to the United States Environmental Protection Agency ("EPA"), studies indicate that exposure to fluorochemical products over certain levels may result in developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes).

86.    The EPA has also warned that there is suggestive evidence of carcinogenic potential for fluorochemical products.

87.    The EPA has noted that drinking water can be an additional source of PFC's in the small percentage of communities where these chemicals have contaminated water supplies. "In communities with contaminated water supplies, such contamination is typically localized and associated with a specific facility, for example…an airfield at which fluorochemical products were used for firefighting."

88.    The EPA has issued Health Advisory Levels of 70 parts per trillion ("ppt") for PFOA and PFOS found in drinking water. When both PFOA and PFOS are

found in drinking water, the combined concentrations should not exceed 70 ppt.

## B.    AQUEOUS FILM-FORMING FOAM ("AFFF")

89.    AFFF is a type of water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports and military bases, among other places.

90.    The AFFF designed, manufactured, marketed, distributed, and/or sold by Defendants contained either or both PFOA and PFOS, or the chemical precursors to PFOA or PFOS.

91.    PFOS and/or the chemical precursors to PFOS contained in 3M's AFFF were manufactured by 3M's patented process of electrochemical fluorination ("ECF").

92.    All other Defendants manufactured fluorosurfactants for use in AFFF through the process of telomerization. Telomerization produced fluorotelomers, including PFOA and/or the chemical precursors to PFOA.

93.    AFFF can be made without PFOA, PFOS, or their precursor chemicals, that do not release PFOA, PFOS, and/or their precursor chemicals into the environment or in humans.

94.    When used as the Defendants intended and directed, Defendants' AFFF releases PFOA, PFOS, and/or their precursor chemicals into the environment.

95.    Once PFOA and PFOS are free in the environment, these chemicals do not hydrolyze, photolyze, or biodegrade under typical environmental conditions and are extremely persistent in the environment. Because of their persistence, they are widely distributed throughout soil, air, and groundwater.

96.    Due to the chemicals' persistent nature, among other things, these chemicals have, and continue to cause injury and damage to Decedent.

## C.    DEFENDANTS' KNOWLEDGE

97.    On information and belief, by the early 1980s, Defendants knew, or reasonably should have known, among other things, that: (a) PFOA and PFOS are toxic; and (b) when sprayed in the open environment per the instructions given by the manufacturer, PFOA and PFOS readily migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

98.    Defendants also knew or reasonably should have known that PFOA and PFOS could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens which cause genetic damage.

99.    In 1980, 3M published data in peer- reviewed literature showing that humans retain PFOS in their bodies for years. Based on that data, 3M estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.

100.    By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

101.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.

102.    Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned "we must view this present trend with serious concern. It is certainly possible that … exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."

103.    Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.

104.    From 1951, DuPont, and on information and belief, Chemours, designed, manufactured, marketed, and sold fluorochemical products, including Teflon nonstick cookware, and more recently, PFAS feedstocks, such as Forafac 1157 N, for the use in the manufacture of AFFF products.

105.    Based on information and belief, in 2001 or earlier, DuPont manufactured, produced, marketed, and sold fluorochemical products and/or PFAS feedstocks to some or all of the AFFF product manufacturers for use in their AFFF products.

106.    DuPont had been studying the potential toxicity of PFOA since at least

the 1960s and knew that it was contaminating drinking water drawn from the Ohio River, and did not disclose to the public or to government regulators what they knew about the substance's potential effects on humans, animals, and/or the environment.

107.   By December 2005, the EPA uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest Environmental Administrative Penalty in Agency History." The EPA fined DuPont for violating the Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the EPA substantial risk information about chemicals they manufacture, process or distribute in commerce."

108.   By July 2011, DuPont could no longer credibly dispute the human toxicity of PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the settlement of a class action over DuPont's releases from its Washington Works plant reviewed the available scientific evidence and concluded that a "probable link" exists between PFOA exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and preeclampsia. By October 2012, the C8 Science Panel concluded that a probable link also exists between PFOA and five other conditions—high cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.

109.   In July 2015, DuPont spun off its chemicals division by creating Chemours as a new publicly traded company, once wholly owned by DuPont. By mid-2015, DuPont had dumped its perfluorinated chemical liabilities into the lap of the new Chemours.

110. Notwithstanding this knowledge, Defendants negligently and carelessly: (1) designed, manufactured, marketed, distributed, and/or sold AFFF products containing fluorochemicals, and/or fluorochemical products for use in AFFF; (2) failed to issue instructions on how AFFF containing fluorochemical products should be used and disposed of; (3) failed to recall and/or warn the users of fluorochemical products, negligently designed products containing or degrading into PFOA and/or PFOS, of the dangers of surface water, soil, and groundwater contamination as a result of standard use and disposal of these products; and (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of fluorochemical products, notwithstanding the fact that Defendants knew foreseeable the identities of the purchasers and end users of the fluorochemical products, as well as the final fate of fluorochemical products in water and biota, including in humans.

**MARVIN LARRY'S EXPOSURE TO AFFF**

111. Upon information and belief, the City of East Point Fire Department has stored and used Defendants' AFFF containing PFOA or PFOS chemicals and/or their precursor chemicals in firefighter training and response exercises.

112. For decades, AFFF containing PFAS have been used in firefighter training and response exercises at military bases, airports and fire departments across the country, including at the City of East Point Fire Department located in East Point, Fulton County, Georgia. The AFFF containing PFAS, which were designed, manufactured, marketed, distributed and/or sold by Defendants, were

expected to, and did, reach the City of East Point Fire Department located in East Point, Fulton County, Georgia, without substantial change in the condition in which it was sold.

113.    Defendants designed, manufactured, marketed, distributed, and/or sold the AFFF containing PFOA or PFOS chemicals and/or their precursor chemicals directly to and/or for use by the City of East Point Fire Department located in East Point, Fulton County, Georgia.

114.    The descriptive labels and material safety data sheets for Defendants' AFFF containing PFOA or PFOS and/or their precursor chemicals utilized by firefighters in the City of East Point Fire Department did not reasonably or adequately describe the AFFF's risks to human health.

115.    The Defendants knew or should have known of the hazards of AFFF containing PFOA or PFOS and/or their precursor chemicals when the products were manufactured.

116.    From approximately 1997 until 2022, Decedent trained and worked with Defendants' AFFF containing PFOA or PFOS chemicals and/or their precursor chemicals to prepare for potential fires that might occur and he also used Defendants' AFFF containing PFOA or PFOS chemicals and/or their precursor chemicals while actively responding to calls on active fires while working as a civilian firefighter for the City of East Point Fire Department located in East Point, Fulton County, Georgia.

117.    Throughout his years of service as a civilian firefighter with the City of East Point Fire Department, Decedent was exposed to, inhaled and ingested

Defendants' AFFF and fluorochemical products.

118.     During Decedent's exposure to Defendants' AFFF products containing PFOA and/or PFOS and/or their precursor chemicals, Decedent ingested such products, and the PFOA and/or PFOS and/or their precursor chemicals entered Decedent's body.

119.     At no point during his training or service did Decedent receive any warning that Defendants' AFFF products containing PFOA and/or PFOS and/or their precursor chemicals were toxic or carcinogenic.

120.     On or about January 27, 2021, Decedent's doctors diagnosed Decedent with prostate cancer. Decedent had undergone treatment for his prostate cancer.

121.     Decedent's prostate cancer metastasized to his colon causing him to become severally ill.

122.     Decedent died of his cancers in Atlanta, Fulton County, Georgia on December 18, 2022.

123.     Decedent suffered from the effects of his illness proximately caused by exposure to Defendants' fluorochemical products.

## CAUSES OF ACTION

### COUNT I.  NEGLIGENCE

124.     Plaintiffs hereby incorporate by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

125.     As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers, or handlers of fluorochemical products, Defendants owed a duty

to Decedent to exercise reasonable care in the instructing, labeling, and warning of the handling, control, use and disposal of Defendants' fluorochemical products.

126.   Defendants also voluntarily assumed a duty towards Decedent by affirmatively representing to Decedent that Defendants' previously detailed acts and/or omissions were not causing any physical harm or other damage to him, and that Defendants' fluorochemical products were safe to use.

127.   Defendants' fluorochemical products are inherently dangerous substances and Defendants owed a duty of care towards the Decedent that was commensurate with the harmful nature of the fluorochemical products and the dangers involved with exposure to fluorochemical products.

128.   Defendants failed to correct, clarify, rescind, and/or qualify its representations to Decedent that Defendants' acts and/or omissions were not causing any physical harm and/or damage to him, or that the fluorochemical products were safe to use.

129.   Despite knowing that their fluorochemical products are toxic, can contaminate soil and water resources, and present significant risks to human health and the environment, Defendants failed to use reasonable care when they: (a) designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold fluorochemical products; (b) issued instructions on how fluorochemical products should be used and disposed of; (c) failed to recall and/or warn the users of fluorochemical products of the dangers to human health and water contamination as a result of standard use and disposal of these products; and (d)

failed and refused to issue the appropriate warnings and/or recalls to the users of fluorochemical products regarding the proper use and disposal of these products, notwithstanding the fact that Defendants knew, or could determine with reasonable certainty, the identity of the purchasers of their fluorochemical products.

130.    But for Defendants' negligent acts and/or omissions, Decedent would not have been exposed to unhealthy levels of fluorochemicals.

131.    Defendants' failure to act with reasonable care to (1) design a product to perform safely; (2) failure to issue an adequate warning or instruction on the use of fluorochemical products warning and; (3) failure to issue a recall, were substantial factors in causing Decedent's harm and eventual death.

132.    Defendants knew or reasonably should have known that users would not realize the danger Defendant's fluorochemical products posed to human health.

133.    A reasonable manufacturer or distributor under the same or similar circumstances would have warned of the danger.

134.    Defendants' negligent acts and omissions directly and proximately caused Decedent's prostate and colon cancers and proximately caused damage to Decedent in the form of severe personal injuries, pain, suffering, emotional distress, and death.

135.    It has been reasonably foreseeable to Defendants for at least several decades that Defendants' negligent acts and/or omissions would directly and proximately cause bodily injury and economic damage to Decedent including the injuries and damages that Decedent suffered from, including death.

136.    Defendants were conscious of the dangers of fluorochemical products, and its negligent acts or omissions, and were conscious that bodily injury to Decedent would or was likely to result from the fluorochemical products and Defendants' negligent acts and/or omissions. Nevertheless, with reckless indifference to these consequences, and as previously detailed, Defendants consciously acted negligently and/or omitted the duties Defendants knew it owed to Decedent, other exposed individuals, and the public at large, and Decedent was harmed as a result, including death.

137.    The acts and omissions of Defendants were negligent,  reckless, malicious, willful and/or wanton, and as a direct and proximate result Decedent, suffered some or all of the following damages:

      a.    Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

      b.    Physical injury, both temporary and permanent;

      c.    Economic Damages;

      d.    Severe and significant emotional distress and mental pain and suffering;

      e.    Humiliation, embarrassment and fear;

      f.    Loss of enjoyment of life;

      g.    Annoyance and inconvenience;

      h.    Wrongful death; and

      h.    Other damages, which, under the law and circumstances, Decedent and/or Plaintiffs are entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

WHEREFORE, the Plaintiffs pray judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT II. NEGLIGENCE PER SE

138.    Plaintiffs hereby incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

139.    One or more federal statutes, including but not limited to 15 U.S.C. §§ 2607 and 2614, 33 U.S.C. §§ 1311(a) and 1342, and 42 U.S.C. §§ 6921-6939e, impose duties of care on Defendants with regards to Defendants' actions and/or omissions towards Decedent and/or Decedent's safety.

140.    By Defendants' acts and/or omissions resulting in harm to Decedent, Defendants violated and/or continue to violate and/or breach one or more federal statutes and/or duties, including but not limited to 15 U.S.C. §§ 2607 and 2614, 33 U.S.C. §§ 1311(a) and 1342, and 42 U.S.C. §§ 6921-6939e, constituting negligence per se, including liability for all injuries to Decedent associated with the fluorochemical products.

141.    Defendants' violation of law and breach of its statutory duties directly and proximately caused damage to Decedent in the form of economic damage, bodily injury, and death, for which Defendants are liable.

WHEREFORE, the Plaintiffs pray judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs

of this action, and for such other and further relief as this Court may deem fit, just, and proper.

### COUNT III.  PAST AND CONTINUING TRESSPASS AND BATTERY

142.    Plaintiffs hereby incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

143.    Defendants have known for several decades that their fluorochemical products are harmful and toxic to humans and animals, and once ingested, will remain in a person's body for a long time, including through binding to blood and/or tissues.

144.    Despite  such  knowledge,  Defendants  continued  to  use  the fluorochemical products, which caused harmful physical contact with Decedent.

145.    Defendants' continued actions with knowledge that such actions will resulted in harmful physical contact with Decedent demonstrate intent and/or reckless indifference by Defendants without regard to the harm they have caused and will cause to others.

146.    Defendants'  intentional  acts  and/or  omissions  have  resulted  in fluorochemicals, in the body of Decedent or otherwise unlawful and harmful invasion, contact, and/or presence of fluorochemicals in Decedent's body, which interfered with Decedent's rightful use and possession of Decedent's body.

147.    The fluorochemicals present in and/or on Decedent's body originating from Defendants' fluorochemical products was at all relevant times hereto, and continues to be, the property of Defendants.

148.    The invasion and presence of the fluorochemical products in and/or on Decedent's body was unconsented and without permission or authority from Decedent or anyone who could grant such permission or authority.

149.    Defendants' intentional acts and/or omissions were done with the knowledge and/or belief that the invasion, contact, and/or presence of fluorochemical products onto, and/or into Decedent's body were substantially certain to result from those acts and/or omissions.

150.    Harmful contact with Decedent's body was the direct and/or indirect result of Defendant's intentional acts and/or omissions.

151.    The presence of the fluorochemical products in and/or on Decedent's body is offensive, unreasonable, and/or harmful and constitutes a permanent trespass and battery.

152.    Defendants' past and continuing trespass and battery upon Decedent's body directly and proximately caused and continues to directly and proximately cause damage to Decedent in the form of bodily injury, including death, for which Defendants are liable.

WHEREFORE, the Plaintiffs pray judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT IV.  STRICT PRODUCTS LIABILITY – FAILURE TO WARN

153.    Plaintiffs hereby incorporate by reference all allegations contained in

the preceding paragraphs of this Complaint as if restated in full therein.

154.    Defendants knew or should have known that exposure to fluorochemical products presented a substantial danger when used because it is hazardous to human health and the environment.

155.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling fluorochemical products would result in physical harm to Decedent.

156.    Ordinary consumers of Defendants' fluorochemical products would not have recognized the risks.

157.    Defendants failed to adequately warn Decedent of the potential risks of fluorochemical products.

158.    Adequate instructions and warnings on the fluorochemical products could have reduced or avoided these foreseeable risks of harm to Decedent's health and life.

159.    Had Defendants provided adequate warnings, Decedent could have taken measures to avoid or lessen the exposure.

160.    The lack of sufficient warnings was a substantial factor in causing Decedent's harm and death. As Defendants' products were:

    1.    Defective because they failed to contain adequate warnings;

    2.    Defectively Designed because they are more dangerous than would be contemplated by an ordinary user, and also because the risks of the products outweigh their benefits; and

      3.      Defectively Manufactured as they failed to comply with their own specifications.

161.    Defendants' failure to warn was a direct and proximate cause of Decedent's prostate and colon cancers which lead to his death.

162.    Defendants' failure to provide adequate and sufficient warnings for the fluorochemical products that they manufactured, marketed, and sold renders the fluorochemical products defective products.

163.    As a direct and proximate result of Defendants' defective design, Decedent suffered some or all of the following damages:

      a.      Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

      b.      Physical injury, both temporary and permanent;

      c.      Economic Damages;

      d.      Severe and significant emotional distress and mental pain and suffering;

      e.      Humiliation, embarrassment and fear;

      f.      Loss of enjoyment of life;

      g.      Annoyance and inconvenience;

      h.      Wrongful death; and

      i.      Other damages, which, under the law and circumstances, Decedent and/or Plaintiffs are entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

164.    As a result of Defendants' manufacture, sale, and/or distribution of a defective product, Defendants are strictly liable in damages to Decedent.

165.    Defendants' acts were willful, wanton, reckless, and/or conducted with a reckless indifference to the rights of Decedent.

WHEREFORE, the Plaintiffs pray judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT V. PRODUCTS LIABILITY – DEFECTIVE DESIGN – RISK-UTILITY

166.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

167.    At all times relevant to the Complaint, Defendants were regularly engaged in the design, formulation, production, creation, making, construction, assembly, rebuilding, sale, distribution, preparation, and labeling, of fluorochemical products.

168.    At all times pertinent to this Complaint, Defendants regularly participated in placing the fluorochemical products into the American stream of commerce.

169.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of fluorochemical products, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Decedent, not to manufacture, sell, or market any product which is unreasonably dangerous for its intended and foreseeable uses.

170.    Defendants' fluorochemical products were defectively designed and

manufactured when the products left the hands of Defendants, such that the foreseeable risks associated with the use, storage, and disposal of the fluorochemical products exceeded the alleged benefits associated with its design and formulation.

171.    At all times relevant to this litigation, Defendants' fluorochemical products reached Defendants' intended consumers and users without substantial change in its condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.

172.    Defendants could have manufactured, marketed, and sold alternative designs or formulations of products that did not contain harmful fluorochemicals.

173.    These alternative designs and/or formulations were available, practical, and technologically feasible.

174.    The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to human health that was caused by the Defendants' manufacture, marketing, and sale of fluorochemical products.

175.    The fluorochemical products manufactured, sold, or distributed by the Defendants were defective in design because the foreseeable risk of harm posed by the fluorochemical products could have been reduced or eliminated by the adoption of a reasonable alternative design.

176.    As a direct and proximate result of Defendants' defective design, Decedent, other exposed individuals, and the public at large have suffered and will continue to suffer some or all of the following damages:

      a.    Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

   b.  Physical injury, both temporary and permanent;

   c.  Economic Damages;

   d.  Severe and significant emotional distress and mental pain and suffering;

   e.  Humiliation, embarrassment and fear;

   f.  Loss of enjoyment of life;

   g.  Annoyance and inconvenience;

   h.  Wrongful death; and

   i.  Other damages, which, under the law and circumstances, Decedent and/or Plaintiffs are entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

177. As a result of Defendants' design and formulation of a defective product, Defendants are strictly liable for damages to Decedent.

178. Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Decedent.

WHEREFORE, the Plaintiffs pray judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VI.  PRODUCTS LIABILITY – DEFECTIVE DESIGN

179. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

180. At all times relevant to the Complaint, Defendants were regularly

engaged in the design, formulation, production, creation, making, construction, assembly, rebuilding, sale, distribution, preparation, and labeling, of fluorochemical products.

181. At all times pertinent to this Complaint, Defendants regularly participated in placing the fluorochemical products into the American stream of commerce.

182. As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and/or marketers of fluorochemical products, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Decedent, not to manufacture, sell, and/or market any product which is unreasonably dangerous for its intended and foreseeable uses.

183. Decedent used Defendants' fluorochemical products in a reasonably foreseeable manner and without substantial changes in the condition in which the products were sold.

184. Defendants' fluorochemical products used by Decedent did not perform as safely as an ordinary consumer would have expected the products to perform when used as Decedent did in an intended or reasonably foreseeable manner because PFOA and PFOS are carcinogens and otherwise harmful to human health.

185. Defendants' defective design of the fluorochemical products was far more dangerous than Decedent or an ordinary consumer would expect when used, as Decedent did, in an intended and reasonably foreseeable manner.

186. Defendants' fluorochemical products failure to perform safely was a

substantial factor in causing Decedent's harm.

187.    Defendants could have manufactured, marketed, and sold alternative designs or formulations of products that did not contain harmful fluorochemicals.

188.    These alternative designs and/or formulations were available, practical, and technologically feasible.

189.    The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to human health that was caused by Defendants' manufacture, marketing, and/or sale of fluorochemical products.

190.    The risks of fluorochemical products were not obvious to users of the AFFF, nor were they obvious to users in the vicinity of the AFFF use, including Decedent, who were unwittingly exposed to Defendants' toxic and carcinogenic chemicals. Decedent could not have reasonably discovered the defects and risks associated with the use of fluorochemical products and could not protect themselves from exposure to Defendants' fluorochemical products.

191.    As a direct and proximate result of Defendants' defective design, Decedent suffered some or all of the following damages:

  a. Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

  b. Physical injury, both temporary and permanent;

  c. Economic Damages;

  d. Severe and significant emotional distress and mental pain and suffering;

  e. Humiliation, embarrassment and fear;

      f.    Loss of enjoyment of life;

      g.    Annoyance and inconvenience;

      h.    Wrongful death; and

      i.    Other damages, which, under the law and circumstances, Decedent and/or Plaintiffs are entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

192.    As a result of Defendants' design and formulation of a defective product, Defendants are strictly liable in damages to Decedent.

193.    Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Decedent.

WHEREFORE, the Plaintiffs pray judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VII.  STRICT LIABILITY (STATUTORY)

194.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

195.    Plaintiffs asserts any and all remedies available under statutory causes of action from Decedent's state for strict liability against each Defendant.

196.    The Defendants were engaged in designing, manufacturing, marketing, selling, and distribution of AFFF.

197.    AFFF was in a defective condition and unreasonably dangerous to users and/or consumers when designed, manufactured, marketed, sold, and/or distributed

to the public by the Defendants.

198.    As a direct and proximate result of the Defendants products' aforementioned defects, the Decedent was injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, loss of life, and other damages.

WHEREFORE, the Plaintiffs pray judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VIII.  STRICT LIABILITY (RESTATEMENT)

199.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

200.    The Plaintiffs bring strict product liability claims under the common law, Section 402A of the Restatement of Torts (Second), and/or Restatement of Torts (Third) against Defendants.

201.    As designed, manufactured, marketed, tested, assembled, equipped, distributed and/or sold by the Defendants the AFFF product was in a defective and unreasonably dangerous condition when put to reasonably anticipated use to foreseeable consumers and users, including the Decedent.

202.    The Defendants had available reasonable alternative designs which would have made the AFFF product safer and would have most likely prevented the

injuries and damages to the Decedent, thus violating state law and the Restatement of Torts.

203.    The Defendants failed to properly and adequately warn and instruct the Decedent as to the proper safety and use of the Defendants product.

204.    The Defendants failed to properly and adequately warn and instruct the Decedent regarding the inadequate research and testing of the product.

205.    The Defendants' products are inherently dangerous and defective, unfit and unsafe for their intended and reasonably foreseeable uses, and do not meet or perform to the expectations.

206.    As a proximate result of the Defendants' design, manufacture, marketing, sale, and distribution of the products, the Decedent was injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, loss of life, and economic damages.

207.    By reason of the foregoing, the Defendants are strictly liable for the injuries and damages suffered by the Decedent, caused by these defects in the AFFF product.

WHEREFORE, the Plaintiffs pray judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

### COUNT IX.  CONCEALMENT, MISREPRESENTATION, AND FRAUD

208.    Plaintiffs hereby incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

209.    Defendants knowingly, intentionally, maliciously, willfully, wantonly, recklessly and/or negligently failed and/or refused to advise Decedent of the dangers and/or health risks posed by Defendants' fluorochemical products.

210.    Defendants negligently, knowingly, maliciously, willfully, wantonly, recklessly, intentionally, and/or negligently withheld, misrepresented, and/or concealed information regarding Defendants' fluorochemical products from Decedent who had a right to know of information which would have prevented Decedent from being exposed and/or continuing to be exposed to the fluorochemical products.

211.    For at least several decades, Defendants had knowledge or the means of knowledge that Defendants' fluorochemical products were causally connected with or could increase the risk of causing damage to humans and animals, including knowledge of statistically significant findings showing a causal connection between exposure to fluorochemical products and physical injuries in humans and animals.

212.    In connection with the fluorochemical products, Defendants have had and continue to have a general duty of care to disclose to Decedent the actual and potential harm to their persons as a direct and proximate result of Defendants' acts and/or omissions, including a general duty of care to disclose to Decedent that Defendants had, and were continuingly, exposing Decedent to harmful levels of fluorochemicals.

213.    In addition to its general duty of care, Defendants also voluntarily

assumed a duty to disclose to Decedent the actual and potential harm to his body as a direct and proximate result of Defendants' acts and/or omissions, including a duty to disclose to Decedent that Defendants had exposed, and were continuingly exposing Decedent to harmful fluorochemical products, which duty was voluntarily assumed by affirmatively representing to Decedent that the Defendants and their fluorochemical exposure were harmless, when Defendants knew and/or reasonably should have known that the Defendants' fluorochemical products caused, and were continuing to cause, bodily injury and death.

214. Through Defendants' superior knowledge, responsibility, and/or control over the fluorochemical products, and Defendants' voluntary actions and/or representations, a relationship of trust and confidence existed between Defendants and Decedent.

215. Despite Defendants' knowledge regarding fluorochemical exposure, and despite Defendants' duties to disclose to Decedent, Defendants negligently, maliciously, knowingly, willfully, wantonly, recklessly and/or intentionally withheld, misrepresented, and/or concealed information from Decedent regarding exposure to fluorochemical products.

216. Defendants withheld, misrepresented, and/or concealed information regarding fluorochemical exposure from Decedent with the intention to mislead and/or defraud him into believing that their fluorochemical exposure was not harmful, and to mislead and/or defraud him into continuing to use the fluorochemical products.

217.   Defendants withheld, misrepresented, and/or concealed information regarding fluorochemical exposure that was a substantial factor in causing Decedent's harm and loss of life.

218.   As a direct and proximate result of the aforesaid acts and/or omissions by Defendants, acting for and on its own behalf and as agent, ostensible agent, employee, conspirator and/or joint venture of others, Decedent was exposed to Defendants' fluorochemical products and was injured.

219.   Defendants not only withheld, misrepresented, and/or concealed material information from Decedent but also committed fraud against Decedent by affirmatively representing to Decedent that their fluorochemical products were harmless and/or did not present any risk of harm, when Defendants knew, reasonably should have known, and/or with utter disregard and recklessness as to whether it was true or not, that Defendants' fluorochemical products had caused, and were continuing to cause, bodily injury and/or risk of such bodily injury to Decedent, including loss of life.

220.   Defendants' representations to Decedent were knowingly, intentionally, negligently, and/or recklessly false.

221.   Defendants had, and continue to have, a duty of care to provide Decedent, with truthful representations regarding the actual and potential harm to his person as a direct and proximate result of Defendants' acts and/or omissions, and Defendants voluntarily assumed a duty of care to provide Decedent with truthful representations regarding Defendants' fluorochemical products and the actual and

potential harm to his persons as a direct and proximate result of Defendants' acts and/or omissions.

222.    Defendants' affirmative representations and/or omissions to Decedent were false and were material to Decedent in forming his belief that Defendants' fluorochemical products were safe, in causing him to continue to use the fluorochemical products, and in causing him to not seek treatment and/or ways to remedy his past exposure to fluorochemical products.

223.    Defendants made the affirmative representations and/or omissions to Decedent with the intention that Decedent would be misled into relying on such affirmative representations and/or omissions.

224.    Decedent relied on Defendants' affirmative representations and/or omissions in forming his belief that Defendants' fluorochemical products were safe in causing them to continue to use the fluorochemical products, and in not seeking treatment and/or ways to remedy his past and continuing exposure to Defendants' fluorochemical products.

225.    Decedent was damaged and physically harmed as a direct and proximate result of his justified reliance on Defendants' affirmative, fraudulent representations and/or omissions and, as a direct and proximate result of such justified reliance, Decedent continued to use the fluorochemical products.

WHEREFORE, the Plaintiffs pray judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just,

and proper.

## COUNT X.  BREACH OF EXPRESS AND IMPLIED WARRANTIES

226.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

227.    At all times relevant hereto, the Defendants manufactured, marketed, labeled, and sold the AFFF products that has been previously alleged and described herein.

228.    At the time the Defendants designed, developed, marketed, sold, labeled, and distributed the AFFF products, the Defendants knew of the use for which it was intended, and implied and/or expressly warranted that the product was merchantable, safe, and fit for its intended purpose.

229.    The Defendants warranted that the product was merchantable and fit for the particular purpose for which it was intended and would be reasonably safe. These warranties were breached, and such breach proximately resulted in the injuries and damages suffered by the Decedent.

230.    The Decedent was within the class of foreseeable users and reasonably relied upon Defendants' judgment, and the implied and/or express warranties in using the products.

231.    The Defendants breached their implied and/or express warranties and did not meet the expectations for the performance of the product when used for its intended use and was neither of merchantable quality nor safe for its intended use in that the product has a propensity to cause serious injury, pain, and cancer.

WHEREFORE, the Plaintiffs pray judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT XI. WANTONNESS

232.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

233.    Defendants and their employees, agents, officers, and representatives owed a duty of care to end users of their AFFF products, including Decedent.

234.    Defendants breached the duty of care owed to the Decedent.

235.    The actions of Defendants and their employees, agents, officers, and representatives were willful and wanton and exhibited a reckless disregard for the life, health, and safety of the end users of Defendants' AFFF products, including Decedent.

236.    As a proximate and foreseeable consequence of the actions of Defendants, Decedent was exposed to unreasonably dangerous toxic PFAS containing AFFF, which caused Decedent's injuries, including loss of life.

WHEREFORE, the Plaintiffs pray judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT XII.  NEGLIGENT, INTENTIONAL, AND RECKLESS INFLICTION OF EMOTIONAL DISTRESS

237. Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

238. Defendants' acts and/or omissions were negligent, intentional, and/or reckless, including Defendants' continued pollution of the environment and resultant exposure of Decedent to harmful fluorochemical products, despite knowing for decades that such exposure was causing and would continue to cause harm and/or unacceptable risk of harm to Decedent, including death.

239. Defendants' negligently, knowingly and/or intentionally withheld and concealed material information from and/or affirmatively misrepresented to Decedent that they were not exposed to harmful fluorochemical products and/or that the fluorochemical products were not causing or creating any risk of harm to them, despite knowing at the time these concealments and/or misrepresentations were made that the fluorochemical products were causing and would continue to cause harm and/or unacceptable risk of harm to persons and/or death, including Decedent.

240. At the time of Defendants' negligent, knowing, and/or intentional acts and/or omissions, it was foreseeable to Defendants and Defendants were certain and/or substantially certain that its actions and/or omissions would cause emotional distress to Decedent.

241. Defendants' acts and/or omissions were extreme, outrageous, intolerable, and/or offended the generally accepted standards of decency and morality.

242. By continuing to expose Decedent to harmful fluorochemical products,

and continuing to misrepresent to Decedent that the fluorochemical products were not and would not cause them harm or risk of harm and/or continuing to withhold and/or conceal from Decedent material information on such issues, despite knowing that the fluorochemical products were causing and would continue to cause harm and/or risk of harm, including death, Defendants acted in an extreme, outrageous, and intolerable manner which offended any generally accepted standard of decency and morality.

243.   Defendants' acts and/or omissions resulting in Defendants' concealment and/or misrepresentations, directly and proximately caused physical harm and death to Decedent.

244.   Defendants' acts and/or omissions resulting in Defendants' concealment and/or misrepresentations, directly and proximately caused great emotional suffering and distress, including death, to Decedent.

245.   Defendants' extreme, outrageous and intolerable actions were a substantial factor in causing Decedent to suffer severe physical, mental, and emotional distress, and death.

246.   As a direct and proximate result of Defendants' extreme, outrageous and intolerable actions, Decedent suffered severe physical, mental, and emotional distress and death.

247.   No reasonable person could be expected to endure the mental anguish caused by the knowledge that entities have negligently, knowingly, and/or intentionally exposed them to years of harmful contact with AFFF containing PFOA

or PFOS and/or their precursor chemicals, and has furthermore actively misrepresented and/or concealed such danger from them, while reaping hundreds of millions of dollars in profits as a direct and proximate result.

WHEREFORE, the Plaintiffs pray judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT XIII.  PUNITIVE DAMAGES

248.    Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

249.    At all times relevant to the present cause of action, Defendants manufactured, marketed, and sold the fluorochemical products that were used by Decedent and that resulted in the physical bodily injuries that Decedent had suffered.

250.    At the time the above-described, affirmative, voluntary, and intentional acts were performed by Defendants, Defendants had good reason to know or expect that their fluorochemical products were toxic chemicals capable of causing harm to human health.

251.    Defendants' negligent, reckless, willful, fraudulent, and/or wanton actions and/or intentional failures to act caused Decedent to be exposed to fluorochemical products.

252.    The willful, wanton, malicious, fraudulent and/or reckless conduct of Defendants, includes, but is not limited to:

a.    issuing no warnings and failing to divulge material information concerning the release of fluorochemicals, including but not limited to PFOA and PFOS;

b.    failing to take all reasonable measures to ensure fluorochemical products would be used effectively and properly disposed of;

c.    failing to prevent the foreseeable impacts of fluorochemical exposure upon the Decedent; and

d.    withholding, misrepresenting, and/or concealing information regarding the releases of fluorochemical products and exposure from Decedent, other exposed individuals, and the public at large with the intention to mislead and/or defraud them into believing that their exposure to fluorochemical products was not harmful, and to mislead and/or defraud them into continuing to purchase and consume drinking water contaminated with fluorochemical products.

253.    As a result of Defendants' conduct, Decedent had been forced to incur significant costs related to the harm caused by Defendants' fluorochemical products and will continue to suffer serious, debilitating, and severe physical, mental, and emotional distress of his prostate and colon cancers caused by Defendants' fluorochemical products.

254.    Defendants have demonstrated an outrageous conscious disregard for the physical safety of Decedent and acted with implied malice, warranting the imposition of punitive damages.

255.    Upon information and belief, Defendants' conduct involved wanton, willful, and/or a conscious and reckless disregard for the health, safety, property, and rights of others. The Court should award the Plaintiffs punitive damages in an amount sufficient to deter and punish such conduct committed on Decedent.

WHEREFORE, the Plaintiffs pray judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT XIV.  SURVIVAL ACTION

256.    Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

257.    Plaintiffs, including the estate, bring this cause of action for Decedent, Marvin Larry's pain and suffering, and Wrongful Death pursuant to O.C.G.A. § 9-2-40 *et seq.*, for the benefit of the children of Decedent, as allowed by O.C.G.A. § 9-2-40 *et seq* and other applicable statutes.

258.    Plaintiffs bring this cause of action for Decedent's medical, surgical and hospital bills, as well as for Decedent's conscious pain and suffering prior to his untimely death, as well as for the mental distress of Decedent due to knowledge of his impending death from his incurable diseases.

259.    As a direct and proximate result of the negligence, recklessness, carelessness, and in some cases intentional actions of Defendants as described, Decedent endured conscious pain, suffering, mental anguish and distress until his untimely death, and Plaintiffs pray for judgment against Defendants in such amount of actual and punitive damages as the trier of fact may determine is just.

## XV.  WRONGFUL DEATH

260.    Plaintiffs incorporate by reference each and every paragraph of this

Complaint as though set forth in full in this cause of action.

261.    Plaintiffs bring this cause of action for Decedent, Marvin Larry's Wrongful Death, pursuant to O.C.G.A. § 51-4-1 *et seq* for the benefit of the children of Decedent, as defined by O.C.G.A. § 51-4-2.

262.    As a direct and proximate result of the negligence, recklessness, and carelessness actions of Defendants as described above, Decedent died on December 18, 2022, and his children have and will endure pecuniary loss, mental shock and suffering, wounded feelings, grief, sorrow, loss of love, loss of society with the Decedent, loss of guidance from the decedent, loss of his companionship and deprivation of the use and comfort of the Decedent's experience, knowledge and judgment in managing the affairs of himself and his beneficiaries, and they have been otherwise seriously damaged. Moreover, reasonable funeral expenses were incurred and Plaintiffs pray for judgment against Defendants in such amount of actual and punitive damages as the trier of fact may determine.

## TOLLING OF THE STATUTE OF LIMIATIONS

A.    DISCOVERY RULE TOLLING

263.    Decedent and/or Plaintiffs had no way of knowing about the risk of serious injury associated with the use of and exposure to AFFF until very recently.

264.    Within the time period of any applicable statute of limitations, Decedent and/or Plaintiffs could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF is harmful to human health.

265.    Decedent and/or Plaintiffs did not discover and did not know of facts that

would cause a reasonable person to suspect the risk associated with the use of and exposure to AFFF; nor would a reasonable and diligent investigation by Decedent and/or Plaintiffs have disclosed that AFFF could cause personal injury.

266.    For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Decedent and/or Plaintiffs' claims.

### B.    FRAUDULENT CONCEALMENT TOLLING

267.    All applicable statute of limitations have also been tolled by Defendants knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

268.    Instead of disclosing critical safety information regarding AFFF, Defendants have consistently and falsely represented the safety of AFFF products.

269.    This fraudulent concealment continues through present day.

270.    Due to this fraudulent concealment, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Decedent and/or Plaintiffs' claims.

### C.    ESTOPPEL

271.    Defendants were under a continuous duty to consumer, end users, and other persons coming into contact with their products, including Decedent, to accurately provide safety information concerning its products and the risk associated with the use of and exposure to AFFF.

272.    Instead, Defendants knowingly, affirmatively, and actively concealed safety information concerning AFFF and the serious risks associated with the use of

and exposure to AFFF.

273.    Based on the foregoing, Defendants are estopped from relying on any statute of limitations in defense of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment, joint and several, against Defendants and/or their "alternate entities" in an amount to be proved at trial, as follows:

I.    For Decedent's actual damages according to proof, including Decedent's pain & suffering, Decedent's mental anguish and or distress as well as Decedent's medical, surgical, hospital bills, and the full value of Decedent's life;

II.    Physical impairment and incapacity suffered by Decedent

III.    For loss of care, comfort and society of the Decedent;

IV.    For pecuniary loss of the beneficiaries/heirs including but not limited to funeral and burial costs, for mental shock and suffering of the beneficiaries/heirs, for wounded feelings of the beneficiaries/heirs, for grief and sorrow of the beneficiaries/heirs, loss of companionship and deprivation of the use and comfort of the Decedent's experience, knowledge and judgment in managing the affairs of Plaintiffs and Plaintiffs' beneficiaries;

V.    Reasonable and necessary medical expenses for treatment received by Decedent.

VI.      Disfigurement suffered by Decedent.

VII.     Lost wages, loss of earnings, and/or lost earning capacity that Decedent

         incurred.

VIII.    For punitive damages according to proof;

IX.      Plaintiffs are awarded full, fair, and complete recovery for all claims and

         causes of actions relevant to this action.

X.       For Plaintiffs' cost of suit herein, fees, expenses and prejudgment and

         post-judgment interest as authorized by law on Plaintiffs' behalf;

XI.      For such other and further relief as the Court may deem just and proper,

         including costs and prejudgment interest as provided by Georgia law.

## **DEMAND FOR JURY TRIAL**

        Pursuant to FED. R. CIV. P. 38(b), Plaintiffs respectfully demand a jury trial

on the issues triable by jury.


Dated: January 12, 2023              Respectfully submitted,

                                     **SIMON GREENSTONE PANATIER, P.C.**


                                     */s/ Shreedhar R. Patel*
                                     Shreedhar R. Patel
                                     TX Bar No. 24074864
                                     1201 Elm Street, Suite 3400
                                     Dallas, TX 75270
                                     Tel: (214) 276-7680
                                     Fax: (214) 276-7699
                                     Email: spatel@sgptrial.com

                                     ***Attorney for Plaintiffs***


PLAINTIFFS' ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL